J-S24016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FREDRICK A. POSTIE, | |
| Appellant | No. 2442 EDA 2014 |

Appeal from the Order entered July 15, 2014,
in the Court of Common Pleas of Carbon County,
Criminal Division, at No(s): CP-13-CR-0000340-2012
and CP-13-CR-0000343-2012

BEFORE:  GANTMAN, P.J., ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 13, 2015**

Fredrick A. Postie ("Appellant") appeals *pro se* from the order denying and dismissing his "Motion to Dismiss Pursuant to Section 110 of the Crimes Code."  We affirm.

The trial court summarized the factual and procedural background as follows:

> The pertinent facts in these two companion cases and the relevant case in Schuylkill County are neither lengthy nor complex.  In later February of 2012, Police Officer Lori Lienhard, of the Summit Hill Police Department, interviewed [Appellant] as it related to various burglaries that occurred in Carbon and Schuylkill Counties.  After admitting his involvement in these burglaries, a plethora of charges were filed against [Appellant] in both counties.
>
> More specifically, the Schuylkill County District Attorney's Office charged [Appellant] with:  two counts of criminal conspiracy, four counts of burglary, eight counts of criminal trespass, four counts of theft by unlawful taking or disposition,

four counts of receiving stolen property, four counts of criminal mischief, and three counts of loitering and prowling at night time, for the alleged burglaries that occurred at 268 East Main Street, Rush Township, 714 and 716 Claremont Avenue, Rush Township, and 474 Fairview Street, Rush Township, respectively. Moreover, the Schuylkill County District Attorney's Office contended that these burglaries occurred sometime between December 12, 2011 and January 22, 2012.

Around the same time, the Carbon County District Attorney's Office filed similar charges against [Appellant], namely, criminal conspiracy, burglary, theft by unlawful taking, receiving stolen property, criminal mischief, and criminal trespass. As alleged in the information to the case indexed 340 CR 2012, [Appellant] committed these various offenses at two residences located at 211 Yard Street, Nesquehoning, Carbon County, sometime between November 17, 2011 and December 3, 2011. Pursuant to the case identified as 343 CR 2012, the Commonwealth has alleged that during the time period of November 30, 2011 through December 21, 2011, [Appellant] committed the offenses listed above at the residences located at: 99, 100, 116, and 495 West White Bear Drive, with all four residences located in the borough of Summit Hill, Carbon County.

Thereafter, [Appellant] stood trial for the charges in Schuylkill County where, by a jury of his peers, he was convicted on twenty-five of twenty-nine counts. Subsequent to that trial, [Appellant] filed the instant compulsory joinder motion here in Carbon County. In the motion, [Appellant] argues that based upon his convictions in Schuylkill County on similar charges, the Carbon County District Attorney is barred from prosecuting him for alleged offenses that might have happened in Carbon County.

After holding a hearing on the motion, [the trial court] by Court Order dated July 15, 2014, denied [Appellant's] compulsory joinder motion, [from] which [Appellant] appealed []. [Although the trial court authored an opinion for submission to the Superior Court, it did not order Appellant to comply with Pa.R.A.P. 1925(b).]

Trial Court Opinion, 9/11/14, at 2-4 (footnotes referencing the applicable statutes omitted).

- 2 -

Appellant presents a single question for our review:

Did the Trial Court err in denying dismissal where the same witnesses and testimony, same evidence, and same investigation by the same officers that were used to produce a conviction in Schuylkill County and will be used in Carbon County at trial creates a Collateral Estoppel issue therefore barring the instant trial where the Commonwealth should have moved for joinder?

Appellant's Brief at 4.

We initially recognize that this interlocutory appeal is properly before us because "an order denying a pretrial motion to dismiss on the grounds of double jeopardy/collateral estoppel is a final, appealable order." *See, e.g., Commonwealth v. Winter*, 471 A.2d 827, 828 n.1 (Pa. Super. 1984) (citations omitted). Our standard of review of issues concerning [18 Pa.C.S.A. §] 110 is plenary. *Commonwealth v. Reid*, 35 A.3d 773, 776 (Pa. Super. 2012).

We thus consider Appellant's assertion that "the instant case is nearly an exact copy of the prior case, [and] the issues have previously and fully been litigated, barring the current prosecution." Appellant's Brief at 9. Appellant maintains that "the factors in [18 Pa.C.S.A. § 110] … have been met and ultimately this case is violating [Appellant's constitutional] rights against double jeopardy." *Id*.

The Commonwealth counters that the trial court "properly found that [Appellant] failed to meet all of the criteria necessary under the Compulsory Joinder Rule, and therefore, failed to show that the prosecution currently

- 3 -

pending in Carbon County is barred." Commonwealth Brief at 2. Upon review, we agree with the Commonwealth.

With regard to compulsory joinder, the Crimes Code specifies:

**§ 110. When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

18 Pa.C.S.A. § 110(1).

In **Commonwealth v. Fithian,** 961 A.2d 66, 72 (Pa. 2008), our Supreme Court explained:

As has been summarized by our Court, Section 110(1)(ii), which is the focus in this appeal, contains four requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

*See Nolan,* 579 Pa. at 308, 855 A.2d at 839; *Commonwealth v. Hockenbury,* 549 Pa. 527, 533, 701 A.2d 1334, 1337 (1997). *Each prong of this test must be met for compulsory joinder to apply.*

**Fithian,** 961 A.2d at 72 (underline added for emphasis).

In the instant case, the Commonwealth conceded that the first and third prongs articulated in 18 Pa.C.S.A. § 110 and **Fithian** had been met. Upon review, we find that the Honorable Joseph J. Matika, sitting as the trial

court, has provided a thoughtful analysis, concluding that the second and fourth prongs (whether Appellant's offenses arose from the same criminal episode and in the same judicial district as the former prosecution) were not met. In explaining his conclusion, Judge Matika has authored a comprehensive and well-reasoned opinion in which he artfully applies pertinent statutory and case law to the facts of record in this case, such that further commentary by this Court would be redundant. Accordingly, we adopt Judge Matika's September 11, 2014 opinion as our own in disposing of this appeal.

Order affirmed. Jurisdiction relinquished. Case remanded for further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :
                              :
        vs.                   :    No. CR 340-2012
                              :    No. CR 343-2012
                              :
FREDERICK ANDREW POSTIE,      :
                              :
        Defendant             :

Jean A. Engler, Esquire              Counsel for Commonwealth
                                     Assistant District Attorney

Frederick A. Postie                  Pro Se

MEMORANDUM OPINION

Matika, J. - September ll , 2014

On July 15, 2014, this Court issued an Order of Court denying and dismissing Defendant's "Motion to Dismiss Pursuant to Section 110 of the Crimes Code." Defendant, subsequent to that order, and on the eve of trial, appealed this Court's decision. This memorandum opinion is offered to the Superior Court, in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), to expand upon the brief holding and rationale set forth in the July 15, 2014 order.[1] Respectively,

---

[1] A defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on double jeopardy grounds. *Commonwealth v. Orie*, 22 A.3d 1021 (Pa. 2011); *see also, Commonwealth v. Feaser*, 723 A.2d 197 (Pa. Super. Ct. 1999)(Pretrial orders denying double jeopardy claims are immediately appealable in absence of written finding of frivolousness by the hearing court.) Moreover, a claim

[FM-46-14]

1

this Court recommends to the Honorable Superior Court to dismiss Defendant's appeal accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts in these two companion cases and the relevant case in Schuylkill County are neither lengthy nor complex. In later February of 2012, Police Officer Lori Lienhard, of the Summit Hill Police Department, interviewed the Defendant as it related to various burglaries that occurred in Carbon and Schuylkill Counties. After admitting his involvement in these burglaries, a plethora of charges were filed against the Defendant in both counties.

More specifically, the Schuylkill County District Attorney's Office charged the Defendant with: two counts of criminal conspiracy,[2] four counts of burglary,[3] eight counts of criminal trespass,[4] four counts of theft by unlawful taking or disposition,[5] four counts of receiving stolen property,[6] four

---

that the compulsory joinder statute prohibits a subsequent prosecution of the defendant implicates double jeopardy principles. *See, Commonwealth v. Schmidt*, 919 A.2d 241 (Pa. Super. Ct. 2007).

[2] 18 Pa.C.S.A. § 903(a)(1).

[3] 18 Pa.C.S.A. § 3502(a).

[4] Four of the counts of criminal trespass alleged that the Defendant broke into a building or occupied structure, a violation of 18 Pa.C.S.A. § 3503(a)(1)(ii). The other four counts of criminal trespass assert that the Defendant violated subsection (a)(1)(i), that being the Defendant entered and remained in the building or structure.

[5] 18 Pa.C.S.A. § 3921(a).

counts of criminal mischief,[7] and three counts of loitering and prowling at night time,[8] for the alleged burglaries that occurred at 268 East Main Street, Rush Township, 714 and 716 Claremont Avenue, Rush Township, and 474 Fairview Street, Rush Township, respectively. Moreover, the Schuylkill County District Attorney's Office contended that these burglaries occurred sometime between December 12, 2011 and January 22, 2012.

Around the same time, the Carbon County District Attorney's Office filed similar charges against the Defendant, namely, criminal conspiracy, burglary, theft by unlawful taking, receiving stolen property, criminal mischief,[9] and criminal trespass. As alleged in the information to case indexed 340 CR 2012, Defendant committed these various offenses at two residences located at 211 Yard Street, Nesquehoning, Carbon County, and 134 Stock Street, Nesquehoning, Carbon County, sometime between November 17, 2011 and December 3, 2011. Pursuant to the case identified as 343 CR 2012, the Commonwealth has alleged that during the time period of November 30, 2011 through December 21, 2011, Defendant committed the offenses listed above at the residences located at: 99, 100, 116, and 495 West White Bear Drive, with all four residences located in

---

[6] 18 Pa.C.S.A. § 3925(a).
[7] 18 Pa.C.S.A. § 3304(a)(5).

[8] 18 Pa.C.S.A. § 5506.

[9] 18 Pa.C.S.A. § 3304(a)(2).

[FM-46-14]

3

borough of Summit Hill, Carbon County.

Thereafter, Defendant stood trial for the charges in Schuylkill County where, by a jury of his peers, he was convicted on twenty-five of twenty-nine counts. Subsequent to that trial, Defendant filed the instant compulsory joinder motion here in Carbon County. In the motion, Defendant argues that based upon his convictions in Schuylkill County on similar charges, Carbon County District Attorney is barred from prosecuting him for alleged offenses that might have happened in Carbon County.

After holding a hearing on the motion, this Court, by Court Order dated July 15, 2014, denied Defendant's compulsory joinder motion, to which the Defendant has appealed that order.

## DISCUSSION

The compulsory joinder rule, as set forth in Section 110 of the Pennsylvania Crimes Code, bars a subsequent prosecution if all of the following criteria are present: 1) the former prosecution resulted in an acquittal or conviction; 2) the current prosecution was based upon the same criminal conduct or arose from the same criminal episode; 3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and 4) all charges were within the same judicial district as the former prosecution. *See*, 18 Pa.C.S.A. § 110(1)(ii);

*Commonwealth v. Hockenbury*, 701 A.2d 1334 (Pa. 1997). In the case at bar, the Commonwealth concedes that the first and third prongs of this test are met; thus, the only consideration left for the Court was to determine if the second and fourth prongs, those being whether the offense arose from the same criminal episode and in the same judicial district as the former prosecution, were present. If so, then Section 110 of the Pennsylvania Crimes Code would forbid the Carbon County District Attorney's Office from prosecuting the Defendant on these related offenses.

The second prong of the compulsory joinder rule, also labeled as the logical relationship prong, compares the present prosecution to the former to determine if both prosecutions arose from the same criminal conduct or episode. *See, Commonwealth v. Nolan*, 855 A.2d 834 (Pa. 2004). As directed by the Pennsylvania Supreme Court in *Commonwealth v. Hude*, 458 A.2d 177, 181-82 (Pa. 1983), the courts must examine the logical and temporal relationship between the criminal acts to determine whether they constitute the same "episode." Subsequent readings of *Hude* have commented that such analysis of this prong cannot be made "by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged." *Commonwealth v. Bracalielly*, 658 A.2d 755, 761 (Pa. 1995). In deciding the logical relationship prong

[FM-46-14]

5

of the compulsory joinder rule, "mere de minimis duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather what is required is a substantial duplication of issues of law and fact." *Id.*

Accordingly, the courts should not construe the phrases "single criminal episode" in a strict sense especially when considering the policy reasons of compulsory joinder, namely to protect a person accused of crimes from the government harassment resulting from being forced to undergo successive trials for offenses originating from the same criminal episode, as well as for judicial economy purposes. *Hude*, 458 A.2d at 180. "However, 'these policy concerns must not be interpreted to sanction "volume discounting."'" *Commonwealth v. Reid*, 35 A.3d 773, 776 (Pa. Super. Ct. 2012)(quoting *Nolan*, 855 A.2d at 840).

In examining the "temporal" and "logical" relationship between the charges in this County and the charges in Schuylkill County, the Court finds that the two prosecutions are temporally related as the two matters overlap each other in terms of the dates these alleged crimes occurred. The alleged crimes in Carbon County occurred between November 17, 2011 and December 21, 2011, while the crimes Defendant was found guilty of in Schuylkill County occurring between December 12, 2011 and January 13, 2012.

Turning to the issue of the logical relationship between the two prosecutions, there is some duplication between the two matters; however, a substantial duplication of fact and law between the matters in Carbon County and the former prosecution in Schuylkill County does not exist. In this subsequent prosecution of the Defendant, the alleged victims are all different from the victims in Schuylkill County, as are all of the locations of the alleged burglaries, and thus each required different investigations by the police. *See, Commonwealth v. Spotz*, 756 A.2d 1139, 1159 (Pa. 2000)(*Spotz II*)(Pennsylvania Supreme Court ruled the subsequent action was not barred by Section 110 of the compulsory joinder statute where three homicides occurred within a three-day period as "there were three victims in three different counties requiring three different investigations, and different witnesses [] necessary [for] each trial."); *see also Hude*, 458 A.2d at 183 (The law and facts between the two prosecution did not involve a situation where different evidence was required as the Commonwealth's case rested upon the credibility of a single witness.)

The Court views Defendant's alleged conduct to be that of multiple episodes of the same criminal enterprise rather than that of a single criminal episode. From mid-November of 2011 through mid-January of 2012, the Defendant allegedly burglarized various properties, some being residences and others unoccupied

structures, within a certain locality. The main commonality between these properties was that they were vacant and they contained copper, copper piping, copper wiring, or other various scrap metal. As the *Nolan* Court so cleverly stated, "[m]uch like a television sitcom, each week's story has similar characters, producers, and continuity of storyline, but each week is a separate episode-the series of episodes is an enterprise... Such is the scenario here; [defendant] starred in his own series with multiple episodes in each county." *Nolan*, 855 A.2d at 840.

Defendant, in his motion and argument to the Court, cited to this Court's order dated September 9, 2013, in which the Court addressed and disposed of Defendant's omnibus pre-trial motion. Defendant points out that in footnote two of that order, the phrase "single criminal episode" appears and thus, as Defendant argued, since the Court concluded in the prior hearing that the prosecutions in Carbon and Schuylkill Counties are derived from the same criminal episode, the Court must likewise conclude the same for this current motion. The Court finds it is necessary to note that it was Defendant who defined these two prosecutions as a single criminal episode as the sentence in which Defendant is referring to reads: "Defendant recognized that the two suppression motions are based upon a single criminal episode." Nowhere did this Court make such a finding.

More importantly, the issue in the previous hearing was whether this Court, in Carbon County, must adopt and incorporate the ruling of Judge Domalakes in Schuylkill County to Defendant's suppression motion, and if so, does the Defendant have new evidence to present that was previously unavailable to him at the first suppression hearing in Schuylkill. In citing to *Commonwealth v. Lagana*, 509 A.2d 863 (Pa. 1986) and *Commonwealth v. Camperson*, 650 A.2d 65 (Pa. Super. Ct. 1994), the Court answered that issue in the affirmative as the Pennsylvania Supreme Court ruled that "where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution." *Lagana*, 509 A.2d at 866. At no point prior to this order has this Court addressed the issue of whether the prosecutions in Schuylkill County and Carbon County originate from the same criminal episode.

As a result of the Court finding that the charges in Carbon County have not arose from the same criminal episode as the charges in Schuylkill County, not all four criteria of compulsory joinder are present. Consequently, this Court need not inquire into the fourth prong of this test, that being that all charges in these two prosecutions were within the same judicial district as the former prosecution. However, for

purposes of being thorough, and since Defendant's appeal implicates double jeopardy principles which have severe ramifications if infringed upon, the Court feels it is necessary to also address the compulsory joinder statute's fourth prong. *See, Commonwealth v. Rightley*, 617 A.2d 1289 (Pa. Super. Ct. 1992).

To fully understand what the General Assembly meant by the phrase "judicial district," it is necessary to review the context that prompted the legislature to amend the former compulsory joinder statute. In *Commonwealth v. McPhail*, 692 A.2d 139 (Pa. 1997), the Pennsylvania Supreme Court, in a plurality decision, held that Section 110 mandated that drug transactions that occurred in two counties, which did constitute a single criminal episode, had to be tried in a single proceeding. *Id.* at 144-45. The *McPhail* Court reasoned that "counties are not separate sovereigns and do not derive their power to try . . . drug cases from independent sources of power." *Id.* at 142. Therefore, "[t]heir subject matter jurisdiction flows from the sovereign Commonwealth of Pennsylvania and is not circumscribed by county territorial limits." *Id.*

In reaching its conclusion, the *McPhail* Court analyzed the Pennsylvania Constitution, and more specifically Article V Section 5; this section reads in relevant part that: "[t]here

shall be one court of common pleas for each judicial district .
. . having unlimited original jurisdiction in all cases except
as may otherwise be provided by law." *Id.* at 141.

As stated by the Pennsylvania Supreme Court in *Commonwealth
v. Fithian*, 961 A.2d 66 (Pa. 2008), "[i]n direct response to our
Court's decision in *McPhail*, the General Assembly amended
Section 110(1)(ii) to its current language. Specifically, the
legislature in paragraph (1)(ii) substituted the phrase 'was
within the jurisdiction of a single court' with 'occurred within
the same judicial district as the former prosecution.'" *Id.* at
76. (internal citation omitted). Accordingly, the *Fithian* Court
concluded that the legislative intent of the compulsory joinder
statute was to limit mandatory joinder to only those offenses
occurring in a single judicial district. *Id.* at 77.[10] Moreover,
the Court held that "the General Assembly intended to preclude
from the reach of the compulsory joinder statute those current
offenses that occurred wholly outside of the geographic
boundaries of the judicial district in which the former
prosecution was brought, even though part of a single criminal
episode." *Id.*

---

[10] The *Fithian* Court defined judicial district to mean "the geographical area
established by the General Assembly in which a court of common pleas is
located." *Fithian*, 961 A.2d at 75.

[FM-46-14]

In evaluating all the charges in both Carbon County cases, there can be no dispute that all the charges, except for the criminal conspiracy charges, occurred in Carbon County, and thus "wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought," that being Schuylkill County. The crimes that the Carbon County District Attorney's Office charged the Defendant with are all specific to certain properties, properties that are located entirely in Carbon County. Thus, the elements for the crimes of burglary, theft by unlawful taking, receiving stolen property,[11] criminal mischief, and criminal trespass could have only occurred in Carbon County, which is a separate judicial district then Schuylkill County.[12] Consequently, Defendant's contention that the crimes that the Carbon County District Attorney's Office charged him with, save for the conspiracy charges, are meritless, for the reasons stated above.

Analogous to the charges before the *Fithian* Court, this Court too had to consider whether the charges of criminal conspiracy brought forth by the Carbon County District

---

[11] Although conceivably the charges of receiving stolen property could be asserted against the Defendant for property that was stolen in Schuylkill County and Defendant received the property within the Carbon County boarder, or vise-a-verse. However, the informations in both Carbon County cases and Schuylkill County case do not charge such a scenario.

[12] Similarly, the Schuylkill County District Attorney's Office charged the Defendant with certain crimes that were only associated to a particular property located in Schuylkill County.

Attorney's Office were to be classified as occurring within the same judicial district as Schuylkill County. As the *Fithian* Court stated, "prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of the unlawful combination." *Id.* at 78 (citing *Commonwealth v. Thomas*, 189 A.2d 255, 258 (Pa. 1963)).

In *Fithian*, the Court permitted the subsequent prosecution of the defendant for criminal conspiracy charges even though the charges could have been brought against the defendant in the former prosecution. *Fithian*, 961 A.2d at 79. The Court affirmed that "the proper analysis, pursuant to our interpretation of Section 110(1)(ii), focuses upon whether the offense occurred within the same judicial district. As these offenses took place solely within [the former] county, they did not occur 'within the same judicial district as the former prosecution.'" *Id.*

At the hearing before this Court on the instant motion, the Defendant only offered the transcript from the trial in Schuylkill County. In reading the transcript, none of the witnesses, which included Defendant's co-conspirators and the Defendant himself, testified that there was a global agreement, or conspiracy, to burglarize specific houses located in both

[FM-46-14]
13

Carbon and Schuylkill Counties. Moreover, as it related to the Schuylkill County charges of criminal conspiracy, none of the witnesses testified, whether explicitly or implicitly, that either the agreement or any overt act occurred within the borders of Carbon County. Thus, in reading the transcript, and the Defendant not proffering any additional evidence to this Court at the hearing on his motion other than the transcript from the trial in Schuylkill County, this Court gleaned that all the elements of the criminal conspiracy charges filed by the Carbon County District Attorney's Office occurred within Carbon County or are not based upon the same conduct as the criminal conspiracy charges brought forth by Schuylkill County.

Accordingly, in addition to not proving that the charges in Schuylkill and Carbon Counties are of the same criminal episode, Defendant was also unsuccessful in establishing that the charges in this subsequent prosecution are charges that were within the same judicial district as the former prosecution, that being Schuylkill County.

## CONCLUSION

Based upon the foregoing, this Court respectfully asks that Defendant's appeal be dismissed as the compulsory joinder statute does not bar the Carbon County District Attorney's Office from prosecuting the Defendant. Accordingly, this Court

[FM-46-14]

14

respectfully recommends that this Court's order dated July 15, 2014 dismissing Defendant's compulsory joinder motion, be affirmed.

BY THE COURT:

Joseph J. Matika, J.

[FM-46-14]

15